## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **LAWRENCE YAGER,** | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL NO. 1-17-CV-00217-ADA** |
| **v.** | § | |
| | § | |
| **BRENT STROMAN, MANUEL** | § | |
| **CHAVEZ, ABELINO RENYA, and** | § | |
| **JOHN DOE;** | § | |
| *Defendants.* | § | |

## ORDER

Before the Court are: Defendant Stroman and Chavez's Motion to Dismiss (ECF No. 20), Defendant Reyna's Motion to Dismiss (ECF No. 19), and the respective responses, replies, and sur-replies thereto. The Court, having considered the Motions and applicable law, finds that the Motions should be **GRANTED**, as discussed below.

## I.  INTRODUCTION

This case stems from the Twin Peaks restaurant incident on May 17, 2015. Members of the Bandidos and Cossacks Motorcycle Clubs, along with hundreds of other motorcycling enthusiasts, converged on the restaurant. Tensions between the Bandidos and Cossacks erupted in a shootout that left nine dead and many injured. In the aftermath of the incident, police arrested 177 individuals on charges of Engaging in Organized Criminal Activity. The probable cause affidavit in support of the arrest warrants was the same for each of the 177 arrestees, and a justice of the peace set bond for each of the arrestees at one million dollars. Only one of the criminal cases ever went to trial (the defendant in that case is not a party to the instant action), and those proceedings ended in a mistrial. The state eventually dropped all remaining charges

against the arrestees. The Plaintiff in this case was arrested pursuant to the same probable cause affidavit as the other arrestees.

Plaintiff brings this case pursuant to 42 U.S.C. § 1983. He alleges that the defendants violated his Fourth Amendment rights by obtaining arrest warrants based on an affidavit that lacked probable cause. Plaintiff also alleges that the defendants violated his Fourteenth Amendment due process right to be free from unlawful arrest, his First Amendment right to freely associate with political groups, and his right to equal protection under the Fifth Amendment. Plaintiff alleges that the Defendants conspired to commit these violations.

There are two groups of defendants in this case. The first group consists of Chief Brent Stroman and police officer Manuel Chavez. The second group is former McLennan County District Attorney Abelino "Abel" Reyna and an unnamed defendant: John Doe, who is an employee of the Texas Department of Public Safety. Notably, Plaintiff brings suit against all defendants in their individual capacity and against Chief Stroman and District Attorney Reyna in their official capacity. However, Plaintiff has not named or served the City of Waco or McLennan County as defendants. The individual defendants all assert qualified immunity.

## II.  LEGAL STANDARDS

Title 42 U.S.C. § 1983 creates a cause of action against any person who, under color of law, causes another to be deprived of a federally protected constitutional right. Two allegations are required to state a cause of action under 42 U.S.C. § 1983. "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988).

Upon motion or sua sponte, a court may dismiss an action that fails to state a claim upon which relief may be granted. Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006). To survive Rule 8, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court begins by identifying which allegations are well-pleaded facts and which are legal conclusions or elemental recitations: accepting as true the former and rejecting the latter. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court need not blindly accept every allegation of fact; properly pleaded allegations of fact amount to more than just conclusory allegations or legal conclusions "masquerading as factual conclusions." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). The court then determines whether the accepted allegations state a plausible claim to relief. *Id.* at 379.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For purposes of Rule 12(b)(6), "pleadings" include the complaint, its attachments, and documents

referred to in the complaint and central to a plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–499 (5th Cir. 2000).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action barred by qualified immunity. *See Bustillos v. El Paso Cnty. Hosp. Dist.*, 226 F. Supp. 3d 778, 793 (W.D. Tex. 2016) (Martinez, J.) (dismissing a plaintiff's claim based on qualified immunity). Qualified immunity shields government officials from civil liability for claims under federal law unless their conduct "violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law," the Fifth Circuit considers qualified immunity the norm and admonishes courts to deny a defendant immunity only in rare circumstances. *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (internal quotation marks omitted).

Courts use a two-prong analysis to determine whether an officer is entitled to qualified immunity. *Cole v. Carson*, No. 14-10228, 2019 WL 3928715, at *5 (5th Cir. Aug. 20, 2019), *as revised* (Aug. 21, 2019). A plaintiff must show (1) the official violated a constitutional right; and (2) the constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Reed v. Taylor*, 923 F.3d 411, 414 (5th Cir. 2019). The Supreme Court held in *Pearson* that "the judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." 555 U.S. at 236. Although qualified immunity is an affirmative defense, the

plaintiff bears the burden to rebut the defense and assert facts to satisfy both prongs of the analysis. *Brumfield*, 551 F.3d at 326. If a plaintiff fails to establish either prong, the public official is immune from suit. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

A heightened pleading requirement is imposed on a civil rights plaintiff suing a state actor in his individual capacity. *Elliott v. Perez*, 751 F.2d 1472, 1479 (5th Cir. 1985). To satisfy the heightened pleading requirement and maintain a § 1983 action against an official who raises a qualified immunity defense, a complaint must allege with particularity all material facts establishing a plaintiff's right of recovery, including "detailed facts supporting the contention that [a] plea of immunity cannot be sustained." *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 954 F.2d 1054, 1055 (5th Cir. 1992). Mere conclusory allegations are insufficient to meet this heightened pleading requirement. *Elliott*, 751 F.2d at 1479.

### III. ANALYSIS

#### A. Statute of Limitations

In determining the applicable limitations period in a § 1983 action, the court looks to the forum state's personal injury limitations period. *See Winzer v. Kaufman Cty.*, 916 F.3d 464, 470 (5th Cir. 2019). In Texas, that limitations period is two years. *Id.*

In general, the plaintiff must make an amendment to change the name of a party within the applicable limitations period or relate back to the date of the original complaint. FED. R. CIV. P. 15(c). However, to relate back, the plaintiff must show that the added defendant received adequate notice of the original lawsuit. Additionally, the plaintiff must show that the defendant knew that, but for a mistake concerning the identity of the defendant, the action would have originally been brought against the defendant. *Winzer*, 916 F.3d at 470. Both of these

requirements must occur within the period provided by Rule 4(m). *Id.* The period allowed by Rule 4(m) for service of the summons and complaint is 90 days after the filing of the complaint. *See* FED. R. CIV. P. RULE 4(m).

Rule 15(c) "is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of error, such as a misnomer or misidentification." *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998) (internal quotations omitted). An amendment to substitute a named party for a John Doe defendant may not relate back to the filing of the original complaint under Rule 15(c)(3) to prevent a lapse in the limitations period. *Jacobsen*, 133 F.3d at 320–21.

In this case, Plaintiff filed the original complaint listing a John Doe on March 7, 2017, with only seventy-one days to spare on the statute of limitations. On June 28, 2017, this Court granted an order staying the case. The order was lifted on November 30, 2018. Plaintiff filed an amended complaint with this Court on February 15, 2019, but he still has not identified John Doe.[1] Assuming *arguendo* that Rule 15(c) even allows an amendment to substitute a named party for a John Doe, both the period allowed by Rule 4(m) and the two-year statute of limitations period have long passed. Accordingly, all claims against John Doe are barred by the statute of limitations and are **DISMISSED**.

## B. Fourteenth and Fifth Amendment Claims

At the outset, the Court notes that Plaintiff brings his claims against the defendants under the First, Fourth, Fifth, and Fourteenth Amendments. But "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of

---

[1]The Court recognizes that Plaintiff's Second Amended Complaint did include the names of several individuals ("Rogers," "Swanton," and "Schwartz") who might be named as the John Doe. ECF No. 16 at 3, n. 1. However, none of those individuals have been named as Defendants. ECF No. 16 at 2–3. Accordingly, those individuals are not before the Court and dismissal of the claims against John Doe is appropriate.

government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal punctuation omitted). A citizen has a right under the Fourth Amendment to be free from arrest unless the arrest is supported by either a properly issued arrest warrant or probable cause. *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004). "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Albright*, 510 U.S. at 274. Because the Fourth Amendment covers unlawful arrest, Plaintiff cannot also seek relief under the Fourteenth Amendment. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010). Accordingly, Plaintiff's Fourteenth Amendment claims are **DISMISSED**, and the Court will address his claims in the context of the Fourth Amendment.

Additionally, Plaintiff claims Defendants deprived him of his right to equal protection under the Due Process Clause of the Fifth Amendment by "arbitrarily arrest[ing] people from some motorcycle clubs, but not from club of which they approved (Christian clubs, e.g.)." ECF No. 16 at 25. However, the Fifth Amendment "applies only to the actions of the federal government, and not to the actions of a municipal government." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Any claim for a violation of equal protection in this case should be pled under the Fourteenth Amendment, not the Fifth Amendment.

However, out of an abundance of caution, the Court will consider Plaintiff's equal protection claims under the Fourteenth Amendment, despite the claims not being properly pled. To allege an equal protection claim under the Fourteenth Amendment, a plaintiff must allege "that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F3d 699, 705 (5th Cir. 1999). A plaintiff must allege

and show that an act was undertaken with an express discriminatory purpose. *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997). Disparate impact alone is not sufficient. *Id.* at 307. Plaintiff's Second Amended Complaint does not sufficiently allege that similarly situated persons outside his class were treated differently by Defendants, nor do they allege that Defendants' actions were motivated by direct, discriminatory animosity. *See* ECF No. 16 at 25. Plaintiff's allegations are insufficient to state a claim for an equal protection violation. Accordingly, Plaintiff's equal protection claims under the Fourteenth Amendment are also **DISMISSED**.

## C. First Amendment Claims

The Court also finds that Plaintiff's First Amendment claims are merely a conclusory re-casting of Plaintiff's Fourth Amendment claims. *See generally* ECF No. 16. Plaintiff has made no specific factual allegations of any Defendants' involvement in any abridgment of his of First Amendment rights. *Id.* Thus, Plaintiff has not pled sufficient facts to establish his First Amendment claim. However, even assuming *arguendo* that Plaintiff's allegations were not merely conclusory, any claim for abridgment of Plaintiff's First Amendment rights to freely assemble or associate that might have resulted from Plaintiff's arrest is defeated by the existence of probable cause for the arrest. *See Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) ("If [probable cause] exists, any argument that the arrestee's speech . . . was the motivation for her arrest must fail . . ."). Furthermore, Plaintiff's claim that Defendants violated his First Amendment rights by considering of his affiliation or association with a particular motorcycle club as part of the probable cause determination for the arrest warrant is also flawed. ECF No. 16 at 24. The Court finds that the criminal statute under which Plaintiff was arrested does not criminalize mere association. *See* Tex. Penal Code Ann. § 71.01. The statute criminalizes

participation in a combination of persons to commit or conspire to commit a criminal offense. *Id.* Defendants' motivation for arresting and charging Plaintiff was the suspicion of Plaintiff's involvement in the commission of criminal conduct. *See* Arrest Affidavit, ECF No. 16 at 16. Plaintiff's suspected association with a motorcycle club is simply a fact that contributes to establishing that involvement. *See Brosky v. State*, 915 S.W.2d 120, 131 (Tex. App.—Ft. Worth 1996, *pet. ref'd*). Affiliations and associations, often indicated through clothing, are a basic part of supporting an engagement in organized criminal activity case. The scope of Plaintiff's right to assembly "does not encompass a right to associate with active members of a criminal street gang for the purpose of engaging in crime." *See TA v. Plier*, 2009 WL 322251, *33 (C.D. Cal. 2009). Accordingly, Plaintiff's First Amendment claims are **DISMISSED**.

**D. *Malley* and *Franks***

There are two claims against government agents for alleged Fourth Amendment violations in connection with a search or arrest warrant: (1) claims under *Malley*, 475 U.S. at 335, for which the agent may be liable if he "fil[es] an application for an arrest warrant without probable cause" and "a reasonable well-trained officer . . . would have known that [the] affidavit failed to establish probable cause," *Michalik v. Hermann*, 422 F.3d 252, 259–60 (5th Cir. 2005) (citations and internal quotation marks omitted); and (2) claims under *Franks v. Delaware*, 438 U.S. 154 (1978), for which the agent may be liable if he "makes a false statement knowingly and intentionally, or with reckless disregard for the truth that results in a warrant being issued without probable cause," *Michalik*, 422 F.3d at 258 n.5. In the instant case, Plaintiff brings claims under both theories.

However, because Plaintiff in this case was indicted by a McLennan County grand jury, Defendants argue Plaintiff's Fourth Amendment claims should be dismissed. Thus, before the

Court can address the substance of the alleged violations, the Court must first address whether the independent intermediary doctrine applies in this case.

### E. Independent Intermediary Doctrine

The City and County Defendants argue Plaintiff's Fourth Amendment claims should be dismissed under the independent intermediary doctrine, which insulates from a false arrest claim the initiating party if an intermediary presented with the facts finds that probable cause for the arrest exists.[2] The Plaintiff in this case was indicted by a grand jury. Defendants argue, correctly, that those indictments break the chain of causation between the defendants and the alleged constitutional harms unless an exception applies. Plaintiff contends an exception does apply such that Plaintiff has stated a plausible claim for relief. The Court finds the doctrine applies, but the exception does not.

"It is well settled that if facts supporting an arrest are placed before any independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc). The Fifth Circuit has repeatedly applied this rule "even if the independent intermediary's action occurred after the arrest, and even if the arrestee was never convicted of any crime." *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016). Thus, unless an exception to the independent intermediary rule applies, Plaintiff's grand jury indictments dooms his Fourth Amendment claims.

Under the taint exception to the independent intermediary rule, a plaintiff may plead a plausible false arrest claim despite the findings of an intermediary "if the plaintiff shows that 'the

---

[2]Defendant Reyna argues he is entitled to absolute prosecutorial immunity from any claim based upon his purported conduct before the grand jury. ECF No. 19 at 19.

deliberations of that intermediary were in some way tainted by the actions of the defendant.'" *Curtis v. Sowell*, 761 Fed. App'x 302, 304 (5th Cir. 2019) (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988)). Because the intermediary's decision protects even individuals with malicious intent, a plaintiff must show that the state actor's malicious motive led the actor to withhold relevant information or otherwise misdirect the independent intermediary by omission or commission. *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2019). The Fifth Circuit recently held that when analyzing allegations of taint at the motion to dismiss stage, mere allegations of taint "may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *Id.* at 690. Thus, to survive Defendants' Motions to Dismiss, Plaintiff must provide sufficient facts supporting the inference that each Defendant maliciously tainted the grand jury proceedings. *See Shaw v. Villanueva*, 918 F.3d 414, 417 (holding a plaintiff must show that the defendant maliciously withheld relevant information or otherwise misdirected the intermediary). Plaintiff has failed to do so in this case.

"The Supreme Court is no-nonsense about pleading specificity requirements." *Shaw*, 918 F.3d at 415. Here, Plaintiff cannot satisfy the requirement in *Iqbal* to plead facts rising above the speculative level demonstrating how *each* Defendant tainted the grand jury proceedings by either omitting evidence or misleading the jury. *See Iqbal*, 556 U.S. at 679*; Shaw*, 918 F.3d at 415. A majority of Plaintiff's allegations are that a defendant, or grouping of defendants, knew that [a particular fact] did not [e.g., establish probable cause as to them or support the charge]; or that the defendants knew that the plaintiff was not involved in gang violence. ECF. No. 16 at 16–23. However, such threadbare allegations are not sufficient to meet the taint exception. *See Glaster v. City of Mansfield*, 2015 WL 8512, *7 (W.D. La. 2015) (plaintiff did not plead involvement of defendant officer in the grand jury proceedings or factually how he tainted the grand jury's

deliberations; officer dismissed on qualified immunity grounds). Plaintiff's inability to provide articulate allegations against specific individual defendants is fatal.

In *Curtis v. Sowell*, the Fifth Circuit recognized that during the motion to dismiss stage, mere allegations of taint may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference. *See* 761 Fed. App'x at 304–05. However, the Fifth Circuit affirmed the district court's decision to dismiss the plaintiff's complaint because the plaintiff did not adequately allege how the defendants, or anyone else, deceived or withheld material information from the grand jury. *Id.* at 305. The plaintiff's allegation that the district attorney "persuaded the grand jury to indict [the plaintiff] even though the district attorney knew that there was no factual or legal basis for the charge" was insufficient to invoke the exception to the independent intermediary doctrine. *Id.*

Similarly, Plaintiff argues Defendants knew they were not in a criminal gang and knew that they did not participate in the criminal conduct at the Twin Peaks restaurant. ECF No. 16 at 13–14. Despite this knowledge, Defendants still pursued an indictment. *Id.* at 19. However, these conclusory allegations, as they were in *Curtis*, are not sufficient to survive a motion to dismiss. Plaintiff admits that they do not know what testimony was given before the grand jury; they don't know who testified before the grand jury; and there is no transcript of the grand jury proceedings. ECF No. 16 at 21–22. In other words, Plaintiff is simply guessing at what took place before the grand jury and who testified before the grand jury.[3] Such allegations are no more than rank speculation. *See Rothstein v. Carriere* 373 F.3d 275, 284 (2nd Cir. 2004) (holding where a person's alleged grand jury testimony is unknown, an "argument that

---

[3]The Court is not requiring Plaintiff to prove the impossible—what occurred inside the secret proceedings of a grand jury. *See McLin v. Ard*, F.3d at 690. However, Plaintiff's allegations amount to no more than "defendants 'knew of' or 'condoned' the alleged violations of the Plaintiff's constitutional rights." Thus, Plaintiff has failed to plead adequate factual allegations to support the taint exception. *See Shaw*, 918 F.3d at 418 (noting that a plaintiff's allegation that the defendant knew of or condoned some falsity or omission was insufficient to state a claim).

[defendant] must have testified falsely to the grand jury amounts to rank speculation."). Because Plaintiff's conclusions and guesses as to who possibly testified before the grand jury and what their testimony could have possibly been are the type of formulaic, threadbare allegations that are insufficient under the Supreme Court's *Twombly/Iqbal* standard, the Court must dismiss Plaintiff's complaint.

As previously mentioned, grand jury proceedings are not generally discoverable. *See Shields v. Twiss*, 389 F.3d 142, 147 (5th Cir. 2004) ("[t]he court notes that under both federal and state law, a general rule of secrecy shrouds the proceedings of grand juries."). However, both federal and Texas law permit discovery of grand jury material when the party seeking discovery demonstrates a "particularized need" for the material. *Id.* at 147–48 (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682–83 (1958); *In re Byrd Enters.*, 980 S.W.2d 542, 543 (Tex. App.—Beaumont 1998, *no pet.*)). "A party claiming a particularized need for grand jury material under Rule 6(e) has the burden of showing "that the material [it] seek[s] is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that [its] request is structured to cover only material so needed." *Id.* at 147. In the present case, Plaintiff has failed to even mention, let alone attempt to articulate reasons why they might meet the standard for such discovery. Even if Plaintiff did so, the Court believes, under the facts alleged by Plaintiff, Plaintiff could not identify a "particularized need" for grand jury material.

Additionally, Plaintiff has failed to allege that *each* Defendant (or Defendants generally) *maliciously* omitted evidence or mislead the grand jury. *See Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988); *see also Scott v. White*, 2018 WL 2014093, *4 (W.D. Tex. 2018). To invoke the exception to the independent intermediary doctrine, it is not enough that the plaintiff plead that

misrepresentations was made to the intermediary or that the defendant omitted to provide material information to the intermediary. The plaintiff must also plead that such conduct was done maliciously. *McLin*, 866 F.3d at 689; *Shaw*, 918 F.3d at 417; *Curtis*, 761 Fed. App'x at 304. Moreover, a plaintiff must plead sufficient factual allegations that *each defendant* maliciously withheld or mislead the grand jury. *Id.* In this case, Plaintiff provides no such factual allegations, let alone allegations concerning *each* defendant. *See generally* ECF No. 16.

Because the Court finds the independent intermediary doctrine applies in this case, Plaintiff's Fourth Amendment claims against the City and County Defendants must fail. Accordingly, the claims against Defendants Stroman and Chavez and the claims against Defendant Reyna are **DISMISSED**.

**F. *Malley* violation**

However, even assuming *arguendo* that independent intermediary doctrine doesn't apply, the Court finds that Plaintiff's complaint still fails to state a claim upon which relief may be granted. Plaintiff alleges that the defendants violated his Fourth Amendment rights by presenting a facially deficient warrant affidavit. ECF No. 16 at 15–16. He argues that the warrant is a general warrant, devoid of sufficient particularized facts related to the plaintiff. *Id.* He argues that the affidavit does not contain any specific facts which would constitute probable cause, but rather, conclusory statements, and that any facts it does contain are false. *Id.*

A *Malley* violation is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant. In *Spencer v. Staton*, an arrestee brought a § 1983 action alleging that she was arrested on a facially invalid warrant that was unsupported by probable cause. 489 F.3d 658, 661 (5th Cir. 2007). The affidavit contained only the arrestee's biographical and contact information, the

charged offense, and a conclusory statement that she had committed the crime of assisting others in evading authorities. *Id.* The Fifth Circuit held that this was "a textbook example of a facially invalid, 'barebones' affidavit." *Id.*

In *Kohler v. Englade*, police searching for a serial killer sought a DNA sample from the plaintiff during a criminal investigation. 470 F.3d 1104, 1107 (5th Cir. 2006). A detective prepared an affidavit for a seizure warrant that offered no indication as to the identity or credibility of a tipster who implicated the plaintiff, nor did the affidavit indicate any corroborating evidence to support the tip. *Id.* at 1110–11. Additional information in the affidavit regarding Kohler's twenty-year-old burglary conviction, employment status, his past employment with a company with a secondary shop on a road where items belonging to one of the victims were found, and refusal to voluntarily submit to a saliva swab, failed to establish probable cause that he was the serial killer. *Id.* at 1111. "Even when considered in their totality, the circumstances set forth in the affidavit failed to provide a nexus" between the plaintiff's DNA and the serial killings. *Id.*

In *Blake v. Lambert*, a challenged affidavit merely identified the plaintiff and recited the charge and relevant statute. 921 F.3d 215, 220 (5th Cir. 2019). The affidavit did not provide enough supporting facts to establish probable cause, such as the officer's experience, the sources of the information in the affidavit or the reliability of those sources, or his conversations with the plaintiff during his investigation. *Id.* at 220–21. The Fifth Circuit found this to be a "textbook example" of a facially invalid affidavit. *Id.* (citing *Spencer*, 489 F.3d at 658).

The affidavit at issue in the instant case stated:

> My name is MANUEL CHAVEZ and I am commissioned as a peace officer with the City of Waco by the State of Texas. I hereby state upon my oath that I have reason to believe and do believe that heretofore, and before the making and filing of this Complaint, that on or about May 17, 2015, in McLennan

County, Texas the said _____ did then and there, as a member of a criminal street gang, commit or conspire to commit murder, capital murder, or aggravated assault, against the laws of the State of Texas.

Three or more members and associates of the Cossacks Motorcycle Club (Cossacks) were in the parking lot of the Twin Peaks restaurant in Waco, McLennan County, Texas. Three or more members and associates of the Bandidos Motorcycle Club (Bandidos) arrived in the parking lot of the Twin Peaks restaurant and engaged in an altercation with the members and associates of the Cossacks. During the course of the altercation, members and associates of the Cossacks and Bandidos brandished and used firearms, knives, or other unknown edged weapons, batons, clubs, brass knuckles, and other weapons. The weapons were used to threaten and/or assault the opposing factions. Cossacks and Bandidos discharged firearms at one another. Members of the Waco Police Department attempted to stop the altercation and were fired upon by Bandidos and/or Cossacks. Waco Police Officers returned fire, striking multiple gang members. During the exchange of gunfire, nine persons were shot. Nine people died as a result of the shooting between the members of the biker gangs. Multiple other people were injured as a result of the altercation. The members and associates of the Cossacks and Bandidos were wearing common identifying distinctive signs or symbols and/or had an identifiable leadership and/or continuously or regularly associate in the commission of criminal activities. The Texas Department of Public Safety maintains a database containing information identifying Cossacks and their associates as a criminal street gang and the Bandidos and their associates as a criminal street gang.

After the altercation, the subject was apprehended at the scene, while wearing common identifying distinctive signs or symbols or had an identifiable leadership or continuously or regularly associate in the commission of criminal activities [...]

ECF No. 16 at 16. Defendants' assertion of qualified immunity requires the Court to first ask "whether a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345. In evaluating the existence of probable cause within an affidavit, the court must consider the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983).

Considering the affidavit against *Malley* caselaw, the affidavit in this case is a significant improvement upon the "classic bare bones affidavit" in *Spencer. See* 489 F.3d at 661. Again, the *Spencer* affidavit merely recited the offense then added a conclusory statement that the

individual committed that offense. *Id*. Defendant Chavez's affidavit, prepared in the context of a melee involving multiple shootings and 177 arrests, clearly identifies the subject, the offense, the parties involved, the time and circumstances under which they met, what they wore, identifying characteristics, and the weapons they used. Unlike the circumstances in *Kohler v. Englade*, the affidavit offers a nexus between the plaintiff and the alleged crime. The affidavit here is also very unlike the *Blake* affidavit, which merely identified the plaintiff and recited the charge and relevant statue.

In sum, Defendant Chavez's affidavit is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (quoting *Leon*, 468 U.S. at 923). Accordingly, even if Plaintiff's claims did not fail based on the independent intermediary doctrine, Plaintiff's claims would still fail to overcome Defendants' qualified immunity. Thus, dismissal is appropriate.

## G. *Franks* violation

"A governmental official violates the Fourth Amendment when he deliberately or recklessly provides false, material information for use in an affidavit in support of a search [or arrest] warrant." *Hart v. O'Brien*, 127 F.3d 424, 449 (5th Cir. 1997). In the context of § 1983 claims asserting Fourth Amendment violations, a governmental official is:

> liable for swearing to false information in an affidavit in support of [an arrest] warrant, provided that: (1) the affiant knew the information was false or [acted with] reckless disregard for the truth; and (2) the warrant would not establish probable cause without the false information.

*Id.* at 442 (citing *Franks*, 438 U.S. at 171). "[T]he fact that a government official did not sign or draft the affidavit in support of a warrant does not preclude his or her liability for Franks violations." *Melton v. Phillips*, 837 F.3d 502, 508 (5th Cir. 2016). An agent can be liable when

he deliberately or recklessly provides false information to another agent, who then includes the misinformation. *Id.* at 507–08.

"To prove reckless disregard for the truth [a plaintiff] must present evidence that [the defendant] 'in fact entertained serious doubts as to the truth' of the relevant statement." *Hart*, 127 F.3d at 449 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)); *Melton*, 837 F.3d at 509. "Whether a defendant in fact entertained serious doubts as to the truth is necessarily a fact question." *Id.* at 509–10. The plaintiff, however, must file a complaint that rests on more than conclusions alone. *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996).

In their Second Amended Complaint, Plaintiff's *Franks* claim alleges that Defendant Chavez deliberately or recklessly included false information in the warrant affidavit and that every operative fact alleged in the affidavit is false. ECF No. 16 at 16–17. Plaintiff also alleges that Defendants Stroman and Reyna each knew that the affidavit was materially false and misleading, but they still presented it to the Magistrate Judge anyway. *Id.* at 19. Lastly, Plaintiff alleged that Defendant Chavez swore to the affidavit, knowing or recklessly disregarding that it was false. *Id.*

Defendants argue that Plaintiff's Complaint makes conclusory allegations without any factual support. ECF No. 19 at 14; ECF No. 20 at 25. In response, Plaintiff argues that he has pleaded sufficient facts to establish his allegations against the Defendants. ECF No. 22 at 26–28.

The Court finds that Plaintiff's Complaint only pleads conclusions. Plaintiff's claim that Chavez knew the affidavit was false lacks specific factual allegations. Additionally, Plaintiff's claim that Defendant Chavez swore to an affidavit containing facts for which he did not know the origin is irrelevant. ECF No. 16 at 28. "An officer who has no personal knowledge of facts asserted in an affidavit [may] rely on information provided by another officer to file a warrant

application." *Bennett v. City of Grand Prairie, Tex.*, 883 F2d. 400, 407 (5th Cir. 1989). Plaintiff does not state any facts to show that Defendants knew or should have known that the information was false. As an example, Plaintiff contends that since Plaintiff was not in a street gang, Defendants' conduct was willful, intentional, and reckless. This conclusory allegation lacks factual detail and particularity. *DeLeon v. City of Dallas*, 141 F. App'x 258, 261 (5th Cir. 2005). This allegation does not meet the heightened pleading standard required in qualified immunity cases. *Id.* In sum, Plaintiff failed to demonstrate how Defendants deliberately or recklessly provided false, material information in the affidavit. *See Hart v. O'Brien*, 127 F.3d 424, 449 (5th Cir. 1997). Accordingly, Plaintiff fails to overcome Defendants' qualified immunity, and dismissal is appropriate.

**H. Conspiracy**

To state a claim for conspiracy under § 1983, a plaintiff must allege the existence of (1) an agreement to do an illegal act; and (2) an actual constitutional deprivation. *Cinel v. Cannock*, 15 F.3d 1338, 1343 (5th Cir. 1994). A claim of conspiracy is not actionable without an actual violation of § 1983. *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). If each alleged state action fails to overcome the qualified immunity protection, the court does not need to reach the issue of conspiracy for those actions. *Id.* at 920–21.

In this case, Plaintiff alleges that Defendants Stroman, Reyna, Chavez, and Trooper Doe entered into a conspiracy to violate the Plaintiff's Fourth Amendment rights. ECF No. 16 at 27. The claim is dependent upon the existence of that constitutional violation. Thus, the conspiracy claim is inherently contingent upon Plaintiff's *Franks* and *Malley* claims.  Because the Court has already found that the Plaintiff failed to overcome Defendants' qualified immunity, the conspiracy claim is not actionable.

19

However, even assuming the *Franks* and *Malley* claims were not dismissed, the Court still finds that Plaintiff's conspiracy claim fails to meet the pleading requirements of *Twombly* and *Iqbal*. Plaintiff Second Amended Complaint merely asserts conclusory allegations of an agreement between Defendants, and Plaintiff does not supply facts adequate to show illegality. Therefore, the conspiracy claim fails on independent grounds, and dismissal is appropriate.

## I. Municipal liability

In his Second Amended Complaint, Plaintiff purports to sue Defendant Stroman and Defendant Reyna in their official capacities. A suit against a governmental official in his official capacity is actually a suit against the governmental entity of which the official is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165–166 (1985). Thus, Plaintiff's claim against Defendant Stroman and Defendant Reyna in their official capacity is actually a suit against the City of Waco and McLennan County, respectively. To bring a claim against a municipality, it, just like any other party, must receive proper notice and an opportunity to respond. *Brandon v. Hol*t, 469 U.S. 464, 472 (1985). Plaintiff did not sue Defendant Stroman or Defendant Reyna in their official capacity in his original complaint. ECF No. 1 at 1–2. Rather, Plaintiff only sued Defendants in their official capacity on February 15, 2019, in his Second Amended Complaint. Plaintiff has never named the City of Waco or McLennan County as defendants in any complaint. Additionally, Plaintiff filed his Second Amended Complaint one year and nine months after the statute of limitations for claims against the City of Waco and McLennan County expired. *See Winzer*, 916 F.3d at 470. Accordingly, all claims against Defendant Stroman and Defendant Reyna in their official capacity are barred by the statute of limitations and are **DISMISSED**.

Plaintiff also brings suit against Defendant Chavez exclusively in his individual capacity and has not named the City of Waco or McLennan County as defendants in this case. To bring a claim against a municipality, it, just like any other party, must be named as a defendant in the suit at hand. Plaintiff has not done so, and thus any other claim for municipal liability, in so far as it even exists, is **DISMISSED**.

## J. Bystander Liability

Plaintiff also apparently seeks to introduce "bystander liability" as a theory of liability against Defendant Reyna. In his Response in Opposition to the motion to dismiss, Plaintiff states, "[e]ven if Reyna, was merely a bystander, bystander liability can be alleged against him." ECF No. 21 at 7. Bystander liability requires that a government actor "(1) knows that a fellow officer is violating an individual's rights; (2) has a reasonable opportunity to prevent the harm; (3) and chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). However, Plaintiff did not present bystander liability as a theory of liability in his Second Amended Complaint. *See* ECF No. 16. When considering a motion to dismiss, the court generally only relies on claims and theories of liability made in the pleadings, and not new claims or theories of liability presented for the first time in a plaintiff's response. *See Davis v. DRRF Tr.*, 2016 WL 8257126, at *3 (W.D. Tex. Jan 6, 2016). Moreover, even if such a new theory could be introduced, Plaintiff has not pleaded facts sufficient to show that Defendant violated any of Plaintiff's rights, let alone that any Defendant had the requisite knowledge of any supposed violation to be liable as a bystander. Because the bystander theory was not properly pleaded, the Court will not consider bystander liability as a theory of liability.

**K. Request for Declaratory Judgment**

Plaintiff also requests the Court enter a declaratory judgment that Defendants violated his First and Fourth Amendment rights. ECF No. 21 at 31–32. Under the Federal Declaratory Judgment Act, the court has broad discretion in determining whether to entertain a declaratory judgment. 28 U.S.C. § 2201; *Winton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). Although the court may not dismiss a request for declaratory relief "on the basis of whim or personal disinclination . . . the court may consider a variety of factors in determining whether to decide a declaratory judgment suit." *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28–29 (5th Cir. 1989). For example, if a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be permitted. *See Pan-Islamic Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980). When considering motions to dismiss, courts regularly reject declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit. *Flanagan v. Chesapeake Exploration, LLC*, 2015 WL 6736648, at *4 (N.D. Tex. Nov. 4, 2015). In this case, Plaintiff's claims for damages under § 1983 allege that he is entitled to compensation because Defendants violated his constitutional rights. ECF No. 16 at 1. Thus, a declaratory judgment that Defendants violated Plaintiff's constitutional rights would necessarily touch matters that have already been resolved by the Court's dismissal Plaintiff's § 1983 claims. Accordingly, because Plaintiff's declaratory judgment claims seek resolution of a matter that has already been dismissed, Plaintiff's declaratory judgment claims are also **DISMISSED**.

**L. Request for Discovery**

In his responses in opposition to Defendants' motions to dismiss, Plaintiff requests limited discovery on the issue of qualified immunity. ECF No. 21 at 31. However, Plaintiff has not pleaded factual allegations sufficient to support this request for discovery. The door to

discovery will not be open for a plaintiff "armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678. Additionally, protection against the rigors of suit, especially discovery, is a particularly important right for Defendants who are entitled to qualified immunity. *Backe v. LeBlanc*, 691 F.3d 645 (5th Cir.  2012). Accordingly, because Defendants are entitled to qualified immunity and Plaintiff has failed to state sufficient non-conclusory allegations supporting his claims against the Defendants, Plaintiff's request for discovery is **DENIED**.

## M. Request to Replead

Plaintiff also requests leave from the Court to amend his complaint to correct any deficiencies in his pleadings prior to dismissal. The court may dismiss a claim after giving Plaintiff opportunity to amend his claims. *See Romero v. Becken*, 256 F.3d 349, 353 (5th Cir. 2001). In this case, Plaintiff has been given ample opportunity to amend his complaint. Plaintiff first filed his original complaint on March 7, 2017 and received Defendants' first motions to dismiss in June of 2017. The Court then ordered that this case be stayed from June 28, 2017, until November 30, 2018. Plaintiff then filed his Second Amended Complaint on February 15, 2019, with the benefit of Defendants' earlier motions to dismiss and ample time to reevaluate his complaint while this case was stayed. Despite this, Plaintiff's Second Amended Complaint again failed to plead non-conclusory allegations sufficient to support his claims. Accordingly, because Plaintiff has had more than ample time and opportunity to amend his complaint and still failed to state a claim upon which relief may be granted, Plaintiff's request for leave to amend his complaint is **DENIED**.

## IV. CONCLUSION

Accordingly, it is **ORDERED** Defendants Stroman and Chavez's Motion to Dismiss is

**GRANTED**, and Defendant Reyna's Motion to Dismiss is **GRANTED**.

 **SIGNED** this 22nd day of May, 2020.


ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE